[Cite as *State v. Pietri*, 2026-Ohio-2933.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                               No. 115418

    v. :

LUIS PIETRI, :

    Defendant-Appellant. :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED; VACATED; AND REMANDED
**RELEASED AND JOURNALIZED:** July 30, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-679930-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Nora Bryan, Assistant Prosecuting Attorney, *for appellee*.

Zukerman, Lear, Murray & Brown Co., LPA, Larry W. Zukerman, and S. Michael Lear, *for appellant*.

DEENA R. CALABRESE, J.:

{¶ 1} Defendant-appellant Luis Pietri appeals from the trial court's judgment rendered after his guilty pleas to several sex offenses. Upon a thorough review of the transcript and applicable law, we reverse the trial court's judgment, vacate the

pleas, and remand the case to the trial court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

{¶ 2} On March 31, 2023, the Cuyahoga County Grand Jury returned a 27-count indictment charging Pietri with four counts of rape in violation of R.C. 2907.02(A)(1)(b), with sexually violent predator specifications; six counts of rape in violation of R.C. 2907.02(A)(2); six counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A); five counts of illegal use of minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(1); five counts of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(1); and one count of possessing criminal tools in violation of R.C. 2923.24(A).

{¶ 3} The trial court held several pretrials over the following months, with the trial date continued multiple times so the parties could engage in plea negotiations. On March 27, 2024, the trial court held a change-of-plea hearing. The trial court addressed Pietri directly, confirming, inter alia, his age, his level of education, the lack of any use of drugs or alcohol within the previous 24 hours, that he had sufficient time to discuss a change of plea with his attorney, and that he had not been threatened or given any promises. The trial court then confirmed the details of the negotiated plea agreement with the prosecuting attorney:

> THE COURT: All right. I'm going to go over the amendment with you, and then I'll go over your Constitutional rights.

So Counts One and Five and Thirteen will all be rape, felonies of the first degree. Count One will be amended from the (A)(1)(b) statute to the (A)(2) statute. Count Five is pled to as charged. That's already under the (A)(2) statute. And Count Thirteen will be under the (A)(2) statute as charged. However, all the sexually violent predator specifications are being dismissed.

Is that correct?

[PROSECUTOR]: Correct, Your Honor.

THE COURT: Okay. So that's Count One, Five, and Thirteen.

Count Seventeen will be pled to as charged, illegal use of a minor in nudity-oriented material, felony of the second degree. It will be pled to as charged. Count Eighteen, pandering sexually oriented matter involving a minor, felony of the second degree, will be pled to as charged. Count Twenty-One, also pandering sexually oriented material involving a minor, felony of the second degree, will be pled to as charged. Count Twenty-Two and Twenty-Five, illegal use of minor in nudity-oriented material or performance, felonies of the second degree, will be pled as charged. And Count Twenty-Seven will be pled to as charged, possessing criminal tools, felony of the fifth degree.

And the items to be forfeited listed in the indictment are an iPhone 13 Pro-Max and an iPhone 8 plus; is that correct?

[PROSECUTOR]: Correct, Your Honor. Thank you.

THE COURT: Further, that the — there's an agreed no contact with the victims, *agreed that the recommended minimum term — and I'll explain that a little bit more in detail — will be 18 to 25 years.* So because these are indefinite sentences, whatever I sentence you to, an additional 50 percent of one of the sentences on one of the counts can be added on by the Ohio Department of Corrections to extend your sentence. And I'll explain that more in a bit.

(Emphasis added.) (Tr. 6-8.)

{¶ 4} The trial court next explained the Reagan Tokes Law. In describing the law to Pietri, it provided an example of the law's application using the agreed, recommended minimum sentencing range:

THE COURT: [I]f I gave you, for example, the maximum on the felony of the first degree, the extension on a felony of the first degree would be an additional five and a half years. So the — if I were to give you the maximum on the 11 years for that count, the extension would be another five and a half years. *So it would be, actually, 18 to 23 and a half or, for the 25 years, it would be 25 to 30 and a half years.* Do you understand?

(Emphasis added.) (Tr. 8.) Pietri indicated he understood. The trial court then stated:

THE COURT: Okay. That is what the agreed recommended sentence is. But I still have to explain to you what the total maximum sentence is on each of these counts.

(Tr. 8.)

{¶ 5} The trial court confirmed with counsel that it correctly understood the terms of the plea agreement. (Tr. 9.) The trial court and Pietri then engaged in a colloquy regarding the constitutional rights he would be waiving by pleading guilty. (Tr. 9-11.)

{¶ 6} Next, the trial court explained the potential maximum sentences Pietri faced on the counts to which he would be pleading guilty. The trial court stated that it could "sentence [him] on each of [the] counts[]" and further that it could "sentence [him] to the maximum amount on each of these counts consecutively." (Tr. 11.) The trial court then walked through the pertinent counts and explained the maximum penalties. (Tr. 11-14.) Pietri provided one-word responses – "Yes" – when asked if he understood the trial court's advisements:

THE COURT: Okay. So because I can — so the maximum penalty is — I can sentence you on each of these counts, and I can sentence you to the maximum amount on each of these counts consecutively. That would be the maximum sentence under the plea.

So for Counts One, Five, and Three [sic], those are felonies of the first degree. That's 3 to 11 years. But with the potential extension, which is — essentially, it takes into account what I call bad-time extension. All right? And I'll explain that in a little bit more detail. The Ohio Department of Corrections can extend you an additional 50 percent of whatever I give you. So it's, actually, 3 to 16 and a half years. Do you understand that?

THE DEFENDANT: Yes.

[PROSECUTOR]: Your Honor?

THE COURT: For felonies of the first degree. And it's up to a $20,000 fine. Yes?

[PROSECUTOR]: Your Honor, I believe you indicated that related to Counts One, Five and Three. I believe it's One, Five, and Thirteen.

THE COURT: Thank you. One, Five, and Thirteen. Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT: Then you have Count Seventeen, Eighteen, Twenty-One, Twenty-Two, and Twenty-Five. Those are all felonies of the second degree. Felonies of the second degree are punishable from 2 to 8 years in prison and up to a $15,000 fine. I can only impose one count with the 50 percent extension. All right? So only one count gets that. However, I'm just gonna inform you anyway it's, actually, 2 to 12 years and up to a $15,000 fine, because that additional four years is the 50 percent extension. Do you understand?

THE DEFENDANT: Yes.

THE COURT: Yes. Okay. Now, because this is a sex offense, you are not entitled to what I call good-time credit. So statute allows for eligibility of a reduction in your sentence between 5 to 15 percent for what they call exceptional conduct to adjustment — conduct or adjustment to incarceration. Because you are pleading to a sex offense, that early release is not available to you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. Further, I'm gonna explain to you what the minimum and the maximum mean. So I would sentence you to a

period of incarceration. I'd choose a period of incarceration for each of these counts. And then I would determine which ones, if any, were to run consecutive to one another. And according to at least the minimum of what you're agreeing to plead to with the minimum recommended sentence, I'd have to run at least one of these consecutive. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Yes. All right. So that would be called your minimum prison term. The maximum term is calculated by adding 50 percent to the minimum term. Therefore, again, the extension can be up to 50 percent of one of the minimum terms. Do you understand?

THE DEFENDANT: Yes.

(Tr. 11-14.)[1]

{¶ 7} Pietri thereafter entered guilty pleas in accordance with the plea agreement. He pled guilty to Count 1 as amended, as well as to Counts 5, 13, 17, 18, 21, 22, 25, and 27 as charged. All remaining counts and specifications were dismissed.

{¶ 8} The trial court ordered a presentence investigation. It also set a date for sentencing, which was later continued.

{¶ 9} On April 12, 2024, Pietri filed, through new counsel, a motion to withdraw his guilty plea. He argued principally that he did not have the opportunity to meet with his previous attorney to review the evidence in the case. He contended, for example, that "the only evidence he reviewed was written witness statements and

---

[1] In his opening brief, Pietri quotes the trial court's maximum-penalty advisement in full, characterizing it as "confusing at best and all but indecipherable at worst[.]" (Pietri's brief at p. 4.) We note, however, that he has not assigned error with respect to the trial court's maximum-penalty advisement or any other aspect of the nonconstitutional right to receive notice of the maximum penalty for the offenses to which he was pleading guilty.

that he never watched any recorded interviews, read any police reports, reviewed any investigative material, medical records, or any other type of evidence pertaining to his case or the State's case in chief." (Motion to withdraw guilty plea at p. 4.)

{¶ 10} The trial court conducted a hearing on Pietri's motion to withdraw guilty plea on April 29, 2024. The trial court noted, inter alia, that the attorney who filed the motion was Pietri's fourth retained counsel. (Tr. 28.) It also noted that trial had been continued several times to allow the parties to negotiate a plea agreement and that Pietri — who had been on court-supervised release subject to GPS monitoring throughout 2022 and up to the date of trial — had received permission to visit his attorney's office. (Tr. 29-30.)

{¶ 11} Further referencing the trial continuances, the trial court noted that they stemmed from the parties' desire to negotiate a plea agreement with a "negotiated sentence[.]" (Tr. 28.) In describing these extensive negotiations over the plea agreement, the trial court employed similar phrases several times, referencing the "agreed recommended sentence" three times and also referring to the "agreed sentence" or "recommended agreed prison terms." (Tr. 28-29, 32, and 34.)

{¶ 12} The trial court denied Pietri's motion to withdraw guilty plea. It explained:

> THE COURT: So that's where we are. And it's not as if he had not met with his attorneys many, many times before. And from the date that we set the 27th on March 11th, no new discovery had been presented. No new information had been presented. Nothing had changed.

In fact, that plea offer, negotiated plea, had not changed for months prior to that. So I am going to — I appreciate he's now saying that he didn't know any of this, but I think that that really has to do with — again, not uncommon when a family finds out that — the shame that is associated with this type of a charge leads people to change their mind based upon family pressure. And I don't see that there's any legitimate basis after everything that's gone on in this case for the defendant to withdraw his plea.

(Tr. 52.)

{¶ 13} The trial court conducted the sentencing hearing on June 3, 2024. During the hearing, the State requested that the trial court impose "the maximum sentence in this case within the agreed, recommended sentence[,]" which it specified as "18 to 25 years." (Tr. 69.) Pietri, through counsel, urged the trial court to lean towards the lower number, requesting that the trial court "consider a prison sentence at the low end of the range closer to the 18 year mark as opposed to the 25 years mark" that the State had requested within the agreed, recommended range. (Tr. 75.)

{¶ 14} Before imposing sentence, the trial court referenced the agreed, recommended sentence:

THE COURT: The agreed sentence is between 18 to 25 years. So I believe that maybe there's one case in which I've gone against the second sentencing recommendation. Because I do believe that when these are negotiated they are negotiated for lots of different reasons, preventing victims from testifying, preventing anybody from having to go through a trial, to mitigate one's exposure to how much time they receive for the initial charges for the original charges rather than the amended or reduced charges.

(Tr. 82-83.) The trial court asked the prosecutor to clarify the facts underlying some of the offenses to which Pietri had pled guilty. It then remarked on those offenses and proceeded to sentencing:

> THE COURT: I mean, there's multiple sex acts here. There's multiple rapes that occurred here and two different victims, one in which was on while you were under indictment for raping in the first place. And I have to determine whether or not these were the worst forms of the offense.
>
> And for rape of nine and 13 year olds, anal and fellatio penetration is in the access — just the description of what happened — having your adopted son watching TV in the next room while they occurred, I believe one time it was even described that your parents were in the residence when it happened when one of the incidents happened.
>
> So for count 1, 11 years in prison under SB 201. So that's actually 11 to 16 and a half years.
>
> Count 5, 11 years.
>
> Count 13, 11 years. And actually I'm going to make the SB 201 count on count 5.
>
> So it's five — 11 to 16 and-a-half years.
>
> On counts 17, 22 and 25, that's illegal use of minor in nudity oriented material. That's eight years on each count.
>
> Pandering sexually oriented manner involving a minor, that's eight — counts 18 and 21, that's eight years on each of those.
>
> Count 27, the felony of the fifth degree, that is 12 years. I'm sorry. 12 months in prison, excuse me. 12 months in prison.
>
> And I am finding — I'm going to run some of these consecutive. I am finding that consecutive prison sentences — well, first just by virtue of your plea agreement the recommended they would have to be run consecutive and everybody understood that. But I'm imposing consecutive prison terms finding that consecutive terms are necessary to punish the offender and or protect the public from future crime.

The consecutive sentences are not disproportionate to the seriousness of . . . your conduct and the danger that you pose to the public.

First, certainly, as I already explained, one or more offenses were committed while you were awaiting trial. I'm finding also two or more the offenses were part of or — part of one or more courses of conduct and the harm caused is so great or unusual that no single prison term would adequately reflect the seriousness of the conduct.

So this is what I called compounding harms. So not only did you sexually assault and rape two underage boys but then you videotaped them, or videotaped one of them, I should say. You used them to create child pornography and that's illegal use of minor in nudity oriented material. Then you sent it out to the universe that can never be reclaimed, pandering sexually oriented material. So you really victimized these children not only physically more than once, but through your other acts you victimized them — at least MA will be victimized for the remainder of time as long as that material is in somebody else's hands, which you specifically made a point to convince him to do this. And one of the reasons why you — one of the ways you were able to convince him was for the money that, who knows if you ever actually received for that or not. Doesn't really matter to me.

So I'm going to run count 1 and 5, that's for each of the two sex victims, sexual assault victims, consecutively. And I'm also going to run counts 17 and 18 consecutive as well for the additional harm that you caused in the videotaping and then pandering sexually oriented material.

*That is a total minimum sentence of 38 years to 43 and a half years.* And I'm going to remind you of the fact that you cannot be given early release or earned credit — earned reduction of minimum term because this is a sexually oriented offense.

(Emphasis added.) (Tr. 84-87.)

{¶ 15} On July 8, 2024, Pietri, through trial counsel, filed an untimely notice of appeal. The matter was assigned 8th Dist. Cuyahoga No. 114130, but this court dismissed the untimely appeal on July 10, 2024. The same trial counsel subsequently filed a motion for delayed appeal under the same case number on August 23, 2024. This court denied the motion the same day, indicating that "[i]n

order to file a motion for delayed appeal, appellant must file a new notice of appeal, along with the motion for delayed appeal."

{¶ 16} On August 8, 2025, Pietri filed a second notice of appeal. On August 12, 2025, he filed a motion for leave to file the notice of appeal out of time. This court denied the motion and dismissed the appeal on August 26, 2025. Pietri filed an application to reopen the appeal pursuant to App.R. 26(B) on October 14, 2025. On December 8, 2025, this court, sua sponte, converted the App.R. 26(B) motion to a delayed App.R. 26(A) application for reconsideration. In the same order, it vacated the previous denial of Pietri's motion for delayed appeal as well as its previous order dismissing the appeal. This court reinstated the appeal to active status.

## II.  Assignments of Error

{¶ 17} Pietri presents two assignments of error for our review:

First Assignment of Error:

Appellant's pleas of Guilty pursuant to the negotiated plea agreement were not made knowingly, intelligently, and/or voluntarily because the Trial Court erred by accepting Appellant's plea without advising Appellant of the Trial Court's intention to not accept or follow the agreed recommended sentencing range and/or because the Trial Court erred by failing to advise Appellant of its intentions to deviate upward from the agreed sentencing range and allow Appellant to reconsider his plea and/or withdraw his plea prior to sentencing, in violation of Appellant's state and/or federal constitutional rights to due process of law, as guaranteed by Article I, Section 16 of the Ohio Constitution and the Fifth and/or Fourteenth Amendments to the United States Constitution.

Second Assignment of Error:

The Trial Court erred and/ or abused its discretion when it denied Appellant's pre-sentence Motion to Withdraw Guilty Plea, in violation of Appellant's state and/or federal constitutional rights to due process of law, as guaranteed by Article I, Section 16 of the Ohio Constitution and the Fifth and/or Fourteenth Amendments to the United States Constitution.

{¶ 18} We find merit to Pietri's first assignment of error. Accordingly, we reverse the trial court's judgment, vacate Pietri's pleas, and remand for further proceedings consistent with this opinion. Our resolution of Pietri's first assignment of error renders his second assignment of error moot.

## III. Analysis

{¶ 19} In his first assignment of error, Pietri argues that his guilty pleas were not made knowingly, intelligently, and voluntarily because the trial court did not advise him of its intention to deviate from the agreed, recommended sentencing range and allow him to reconsider his plea, all in violation of his constitutional rights. We find merit to this assignment of error.

{¶ 20} Because "a guilty plea involves the waiver of constitutional rights, the decision to enter the plea must be knowing, intelligent, and voluntary." *State v. Johnson*, 2025-Ohio-5513, ¶ 7 (8th Dist.), citing *State v. Dangler*, 2020-Ohio-2765, ¶ 10. Enforcement of a plea is unconstitutional if the plea was not made knowingly, intelligently, and voluntarily. *Johnson* at ¶ 7, citing *Dangler* at ¶ 10.

{¶ 21} "Crim.R. 11 requires that the defendant be fully aware of the potential consequences of his plea." *State v. Jordan*, 2024-Ohio-2361, ¶ 21 (8th Dist.). Furthermore, "'[w]here a sentence recommendation is an integral part of a plea

agreement, the failure to inform the defendant of potential changes may result in a plea that was not entered into knowingly, voluntarily, or intelligently.'"" *Id.*, quoting *State v. Dunbar*, 2007-Ohio-3261, ¶ 139 (8th Dist.), quoting *State v. Allgood*, 1991 Ohio App. LEXIS 2972, *9 (9th Dist. June 19, 1991).

{¶ 22} A trial court is unquestionably vested with discretion when sentencing under plea agreements, and it "is not obligated to follow the negotiated plea entered into between the state and the defendant." *Jordan* at ¶ 22, citing *State v. Orlando*, 2013-Ohio-2335, ¶ 14 (8th Dist.). "'However, before the trial court imposes a longer prison sentence than what is recommended in the plea agreement, due process requires the trial court to put the defendant on notice of that possibility before accepting the guilty plea.'" *Jordan* at ¶ 22, quoting *State v. Williams*, 2017-Ohio-2662, ¶ 4 (8th Dist.).

{¶ 23} We agree with Pietri that the present case is similar to *Jordan*. Indeed, in *Jordan*, the trial court's statements prior to accepting the pleas that it could impose a sentence in excess of the agreed, recommended range were clearer than in the present case.

{¶ 24} *Jordan*, 2024-Ohio-2361 (8th Dist.), involved numerous charges of burglary and theft. The plea agreement included an agreed, recommended sentence of 15-18 years, with the condition of no early release. The trial court, however, ultimately imposed consecutive sentences for a minimum prison term of 32 years with a maximum of 36 years.

{¶ 25} During the plea colloquy in *Jordan*, the trial court referenced the agreed, recommended sentence when Jordan expressed confusion over the terms of the plea agreement:

> JORDAN: The things that they just going — what the time-wise me — they said 15 years with no early release. I'm not understanding that.
>
> THE COURT: What's not clear about 15 to 18 with no early release? It seems pretty straightforward. You do 15 to 18 years and you don't get out early.
>
> JORDAN: Day for day?
>
> THE COURT: I don't know what you're talking about day for day.
>
> JORDAN: So that mean I would have to do 15 years day for day?
>
> THE COURT: Yeah. You do every day of the 15 years.

*Id*. at ¶ 8.

{¶ 26} Later, when the trial court inquired whether any promises had been made "outside of what we've said in court this morning to get you to enter into this plea agreement," Jordan stated he was "not promised" concurrent sentences, but that he was "told [he] was getting concurrent time." *Id*. at ¶ 10. The trial court immediately clarified:

> THE COURT: That has not been promised to you. Do you understand that?
>
> JORDAN: Yes, your honor.

*Id*. at ¶ 10.

{¶ 27} Moreover, the following exchange occurred before the trial court accepted Jordan's pleas:

THE COURT: Okay. The State is agreeing to a 15 to 18-year term without early release. I just want to make sure you understand that the State doesn't have any say in sentencing. That's the Court's job. I can sentence you any way I wish.

JORDAN: Okay.

THE COURT: Do you understand that?

JORDAN: Yes.

*Id.*, 2024-Ohio-2361, at ¶ 12 (8th Dist.).

**{¶ 28}** Finally, after further colloquy regarding restitution and postrelease control, the trial court and Jordan engaged in this exchange:

THE COURT: And again, lastly, do you understand the Court has not promised you any particular sentence in exchange for your entry into this plea agreement?

JORDAN: You said that again, your Honor?

THE COURT: Do you understand the Court has not promised you any particular sentence in exchange for your entry into this plea agreement?

JORDAN: Yes.

*Id.* at ¶ 13.

**{¶ 29}** The trial court accepted Jordan's guilty pleas. It then indicated that it had hoped to proceed directly to sentencing but deferred to the State's request to contact victims. Sentencing was scheduled for the next day. At the sentencing hearing, after noting Jordan's extensive criminal history, the trial court heard from the prosecutor (who read a victim-impact statement), one victim who appeared in person, and a Cleveland Heights detective. The trial court learned, among other things, that Jordan had cut off a GPS monitor in order to commit certain burglaries.

It also received details concerning his disturbing modus operandi, which included watching homes to see when owners left. The trial court also learned that Jordan and an accomplice had confronted a family's nanny inside a home and that a family dog was injured in one incident. *Id.* at ¶ 15.

{¶ 30} The trial court also heard mitigation evidence, including from Jordan's mother. *Id.*, 2024-Ohio-2361, at ¶ 16 (8th Dist.). Jordan's counsel highlighted Jordan's mental-health issues and drug problems, as well as the fact that he was currently serving a prison sentence stemming from a conviction in a different county. *Id.* Counsel urged the court to sentence Jordan within the agreed, recommended range. *Id.* As noted above, however, the trial court "imposed consecutive sentences for a total prison sentence of 32 to 36 years." *Id.* at ¶ 30.

{¶ 31} On appeal, this court found "merit to Jordan's main challenge that his plea is invalid because the trial court deviated from the agreed, recommended sentence of 15-18 years." *Id.* at ¶ 20. While this court agreed with the State that Jordan had been clearly informed by the trial court, more than once, that it was not bound by the agreed, recommended sentence, it nevertheless held:

> The problem, however, is that after the trial court decided it would not impose the agreed, recommended sentence but would impose a sentence nearly double than what was agreed and recommended by the state and the defense, it should have given Jordan an opportunity to reconsider his guilty plea.

*Id.* at ¶ 25. This court quoted a passage from an Eleventh District case, emphasizing the same language we highlight here:

[T]he law is somewhat less settled in those cases where the trial court appears to indicate that it accepts the negotiated plea agreement before the court accepts the defendant's plea, and then deviates from the recommended sentence or terms contained within the plea agreement at the time of sentencing. The analysis in these scenarios turns to due process concerns over whether the accused was put on [notice] that the trial court might deviate from the recommended sentence or other terms of the agreement before the accused entered his plea *and whether the accused was given an opportunity to change or to withdraw his plea when he received this notice.*

(Emphasis added.) *Warren v. Cromley*, 1999 Ohio App. LEXIS 206, *7-8 (11th Dist. Jan. 29, 1999). This court then continued:

Regarding an "agreed sentence that forms the basis of the plea, the sentence itself is part of the quid pro quo for the agreed plea. Although the trial judge is free to accept or reject that agreement, it is incumbent upon the court to do so expressly. To hold otherwise creates a false expectation in the mind of the defendant over the underlying nature of the plea agreement." *State v. Huffman*, 2018-Ohio-1192, ¶ 20 (8th Dist.). The overall concern is "whether the defendant 'had a reasonable expectation that the trial court would implement the agreed sentence.'" *State v. Lumbus*, 2013-Ohio-4592, ¶ 39 (8th Dist.), quoting *Dunbar*, 2007-Ohio-3261, at ¶ 129 (8th Dist.).

*Id*. at ¶ 27.

{¶ 32} This court found that Jordan had a reasonable expectation of receiving a sentence within the agreed range. The trial court knew of the nature of Jordan's offenses and his criminal history but stated "that under the plea agreement, Jordan would 'do 15 to 18 years and you don't get out early,' and '[y]ou do every day of the 15 years.'" *Id*. at ¶ 28-29.

{¶ 33} The *Jordan* Court further noted that the trial court had hoped to proceed directly to sentencing, which suggested that it had already determined it would sentence Jordan to a term of imprisonment exceeding the agreed,

recommended range. A close reading of *Jordan*, however, suggests this fact was not critical to the outcome on appeal. This court first wrote that "[w]hen a trial court decides not to impose the agreed, recommended sentence, it should clearly advise a defendant of its intentions, and allow the defendant to reconsider his plea." *Id.* at ¶ 30, citing *State v. Swortchek*, 2020-Ohio-2831, ¶ 25 (8th Dist.), citing *Dunbar*, 2007-Ohio-3261, at ¶ 140 (8th Dist.), citing *Allgood*, 1991 Ohio App. LEXIS 2972, at *10 (9th Dist. June 19, 1991). It then stated, however:

> *Regardless of when the trial court in this case determined that it would deviate from the agreed, recommended sentence*, we find that the trial court committed error because it did not expressly reject the agreed, recommended sentence prior to accepting Jordan's guilty plea *or give Jordan an opportunity to withdraw his plea.*
>
> Trial courts must be mindful that an appearance of a "bait and switch" could exist in circumstances when the court deviates from an agreed, recommended sentence when a defendant has a reasonable expectation that the court will impose that sentence. *See State v. Elliott*, 2021-Ohio-424, ¶ 17, 168 N.E.3d 33 (1st Dist.), quoting *State v. Cox*, 1990 Ohio App. LEXIS 4955, *3-4 (4th Dist. Oct. 23, 1990) (Grey, J., dissenting) ("[T]he court may listen to the prosecutor's recommendation of an unacceptable sentence, accept a plea of guilty based on that recommendation, but then ignore the prosecution's recommendation and yet still hold the defendant to this guilty plea. This smacks of the bait and switch tactics of consumer fraud.").

(Emphasis added.) *Id.* at ¶ 31-32. This court therefore held that *Jordan* "did not enter a knowing plea because the trial court imposed a substantially greater sentence than what was agreed and recommended without giving him an opportunity to withdraw his plea." *Id.* at ¶ 33.

{¶ 34} The present case presents even more compelling facts than *Jordan*, 2024-Ohio-2361 (8th Dist.). The facts suggest that Pietri had a reasonable

expectation of receiving a sentence within the agreed range and that his decision to plead guilty was largely driven by that reasonable expectation. The trial court noted the agreed, recommended sentencing range of 18 to 25 years during the plea hearing. Before accepting Pietri's pleas, it used those exact figures in explaining the application of the Reagan Tokes Law. Furthermore, while the trial court complied with its obligation to specify the maximum prison terms associated with each count, unlike the trial court in *Jordan* it did not clearly warn Pietri that it could deviate from the agreed, recommended minimum sentencing range of 18 to 25 years.

{¶ 35} The trial court's statements during the hearing on Pietri's motion to withdraw guilty plea, while obviously not made prior to the plea hearing, further suggest that the agreed, recommended sentence was a strong inducement for Pietri's guilty pleas. The trial court noted that trial had been continued several times to permit further negotiations in hopes of reaching a plea agreement with a "negotiated sentence[.]" (Tr. 28.) In denying the motion to withdraw his guilty plea, the trial court referenced the "agreed recommended sentence" three times, as well as referring to the "agreed sentence" or "recommended agreed prison terms." (Tr. 28-29, 32, and 34.)

{¶ 36} The trial court nevertheless imposed a sentence significantly higher than the agreed, recommended range. Thirty-eight years is more than twice the low end of the agreed, recommended minimum sentence of 18 to 25 years. Forty-three years is approximately 72 percent higher than the high end of the agreed, recommended minimum sentence. At no point during the plea hearing did the trial

court inform Pietri that it had rejected the agreed, recommended sentence or that it planned to deviate from it in any fashion, and it gave him no opportunity to withdraw his plea before imposing this significantly longer sentence

{¶ 37} We find *State v. Lindsey*, 2025-Ohio-1464, ¶ 18 (8th Dist.), cited by the State, distinguishable. In that case, the trial court made it exceptionally clear during the plea hearing that it could deviate from the agreed, recommended sentence. "[T]he trial court told Lindsey multiple times during the plea colloquy that the plea agreement was between him and the State and the trial court was not party to that agreement." *Id.* at ¶ 18. In addition, "[t]he trial court also told Lindsey multiple times that there were no promises as to what his sentence would be." *Id.* Moreover, "the trial court told Lindsey multiple times that his sentence could be more time or less time than what was recommended by the plea agreement." *Id.* Moreover, Lindsey's own words — not merely responses of "yes" or "I understand," but as expressed in a specific statement — indicated he understood that the trial court could impose more prison time than contemplated under the plea agreement's recommended sentence:

> Later in the plea colloquy, Lindsey acknowledged his understanding. In fact, it is clear from the record that Lindsey knew he could be sentenced to more than the recommended sentence in the plea agreement when he stated: "[S]o even if we was to come to a set agreement on a number, you still could give me more or less." (Tr. 35.)

*Id.* at ¶ 19. Unlike Lindsey, Pietri had a reasonable expectation that the trial court would impose a sentence within the agreed, recommended range of 18 to 25 years.

{¶ 38} Finally, we do not view the trial court's decision to order a presentence investigation as inconsistent with an intention to sentence within the agreed, recommended range, i.e., whether to sentence closer to the low end of 18 years or closer to the high end of 25 years. Moreover, even if it was only after receiving the report that the trial court decided to more than double the minimum sentence, this court stated in *Jordan* that "[r]egardless of when the trial court . . . determined that it would deviate from the agreed, recommended sentence," it must either "expressly reject the agreed, recommended sentence prior to accepting [the] guilty plea or give [the defendant] an opportunity to withdraw [the] plea." *Jordan*, 2024-Ohio-2361, at ¶ 31 (8th Dist.). Because the trial court here imposed a substantially longer sentence than the agreed, recommended range without either notifying Pietri of its intention to do so prior to accepting the pleas or – regardless of when it decided it would deviate from the agreed, recommended range – giving him an opportunity to withdraw his pleas, the trial court erred, and Pietri did not enter a knowing plea. *See Jordan* at ¶ 33.

{¶ 39} Our resolution of Pietri's first assignment of error renders his second assignment of error moot. App.R. 12(A)(1)(c).

{¶ 40} The trial court's judgment is reversed, Pietri's pleas are vacated, and the case is remanded for further proceedings consistent with this opinion.

{¶ 41} Judgment reversed, vacated, and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

MICHELLE J. SHEEHAN, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR